[Sac. No. 683.    Department Two.—November 30, 1900.]

W. A. WALLACE et al., Respondents, v. FARMERS' DITCH
COMPANY et al., Appellants.

RIPARIAN RIGHTS—STREAM AND BRANCH—DIFFERENCE OF LEVEL—MAIN-
TENANCE OF DAM—FINDINGS OUTSIDE OF ISSUES.—In an action in-
volving the relative riparian rights of the plaintiffs upon a
main stream, and of the defendants upon a branch thereof,
where the complaint alleged that the bed of the branch was
three feet above the level of the stream, that defendants had
lowered its bed to plaintiff's injury, and plaintiffs had restored
the original level by means of a dam, for the threatened de-
struction of which an injunction was sought, and where the
answer merely took issue upon the allegations of the com-
plaint, findings as to the size, contour, roughness, grade, and
velocity of the river, and as to the specific quantity of water
plaintiffs are entitled to have flow past the head of the branch,
are outside of the issues, and cannot support a judgment based
thereon.

ID.—APPEAL—UNCERTAINTY OF FINDINGS AND JUDGMENT—MODIFICATION—
REVERSAL—PARTIES NOT APPEALING.—Upon appeal from such judg-
ment, where the findings outside of the issues and the judg-
ment leave it uncertain at what height the dam may be main-
tained, and appear to indicate that it may be maintained at
different heights, so as to secure the flow of a specified quan-
tity of water to the plaintiffs, the judgment cannot be modi-
fied, but must be reversed as to the appellant, though it will
not be disturbed as to the rights of parties not appealing.

ID.—RIGHTS OF RIPARIAN OWNERS UPON BRANCH.—The riparian owners
of the land upon the branch of the stream are entitled to have
their rights protected against the maintenance of the dam at
its head at a greater height than is justly warranted.

ID.—EVIDENCE—IMMATERIAL DIVERSIONS.—Evidence of diversions above
and below the head of the branch is not germane or material
to the issue as to the right to maintain the dam at the head
of the branch, and is properly rejected.

ID.—NATURAL FILLING OF BED OF STREAM.—Evidence of the natural filling
of the bed of the main stream was properly confined to the
head of the branch stream, and evidence of such filling at points
three miles above and a mile and a quarter below the head of
the branch was properly rejected.

APPEAL from a judgment of the Superior Court of Tulare
County and from an order denying a new trial.    J. R. Webb,
Judge.

The facts are stated in the opinion of the court.

J. A. Hannah, and Alfred Daggett, for Appellants.

E. O. Larkins, William W. Cross, Bradley & Farnsworth, Maurice E. Power, and Power & Alford, for Respondents.

McFARLAND, J.—This is an appeal by two of the defendants, the Farmers' Ditch Company and George D. Bliss, from the judgment and from an order denying their motion for a new trial. The case involves certain water rights in the Kaweah river.

The Kaweah river is a natural watercourse which has its source in the Sierra Nevada mountains, and flows westerly into the San Joaquin valley and through Tulare county. At a certain point there is a diversion of the stream, and a part of the water runs at times out of the main river into a branch called Deep creek. Respondents are riparian owners and proprietors on the main river below the head of Deep creek, and the appellants are riparian owners and proprietors on Deep creek. The main river below the head of Deep creek is sometimes called Mill creek. It is averred in the complaint that the bed of Deep creek at the point where it leads out of the river was naturally "more than three feet higher than the bed of said Kaweah river, and the water flowing in said Kaweah river did not and could not flow into said Deep creek until it was more than three feet deep in the said river." It is further averred that before the commencement of the action appellants wrongfully cut and artificially lowered the bed of Deep creek so that it became at its head as low as, if not lower, than the bed of the river, and this caused nearly the whole of the water of the river which was accustomed to flow and of right ought to have flowed down said river to flow into said Deep creek. It is further averred that "for the purpose of restoring the bed of the channel of said Deep creek at its head to its former natural condition," so that the water would flow as it was accustomed, etc., the respondents constructed a dam along the bank of the river and across the head of Deep creek, "which said dam does not prevent any water from flowing into said Deep creek which formerly was accustomed and of right ought to flow therein." It is further averred that ap-

pellants threaten to, and if not restrained by the court will, "tear out and remove said dam, and will thereby divert nearly the whole of the water of said river," etc. The prayer is that appellants be restrained by injunction from removing or in any way interfering with said dam. The appellants, by their answers and cross-complaints, deny that the bed of Deep creek is naturally any higher than the bed of the river, and deny that they have lowered the same; aver that respondents have wrongfully put in said dam and thereby wrongfully exclude from Deep creek the waters which would otherwise naturally flow therein; and pray for an injunction requiring respondents to remove the dam, and restraining them from putting in any dam or other obstruction at the head of Deep creek.

Upon these issues—which are the main ones in the case— the court found that prior to the alleged wrongful acts of the appellant the bed of the channel of Deep creek at the point where it leads out of the river, and for about one mile below said point, was two and one-half feet higher than the bed of the river; and that the appellants did enter upon the bed of Deep creek, and dug down and scraped out the same, and thereby caused the bed to be lowered to the level of the river, and thereby caused nearly the whole of the water of the river to flow down Deep creek, and prevented it from flowing down the river as it was accustomed theretofore naturally to flow.

The main finding of the court intended to declare and define the rights of the parties in the premises—finding 18, as amended—is as follows:

"That for the purpose of restoring the bed of the channel of said Deep creek at its head to its former natural condition, so that the waters would flow in said Kaweah river as it had been accustomed to and of right ought to flow therein, and for the purpose of causing the waters of said Kaweah river to flow to and in said Mill creek as it had been accustomed to and of right ought to flow therein, the plaintiff did, on the nineteenth day of April, 1896, construct a dam in and across the head of said Deep creek, but said dam should be only of sufficient height to allow a stream of water two and one-half feet deep and twenty feet wide on the bottom and thirty-five feet wide on the top, and on a grade of two feet in four thousand three hundred and eighty-nine feet using coefficient C—60 in the formula

Velocity—CVrs, to flow past the head of said Deep creek and
down the Kaweah river before any shall flow down said Deep
creek from said Kaweah river, and the crest of said dam
should be lowered to two and one-half feet high on the said
Kaweah side of said rock dam for a distance of seventy-five
feet, but not to be lowered so as to allow any water to pass
into Deep creek until a stream of water two and one-half feet
deep and twenty-five feet wide on the bottom and thirty-five
feet wide on the top, and on a grade of two feet in a distance
of four thousand five hundred and eighty-nine feet using
coefficient C—60 in a formula Velocity—CVrs, shall pass the
head of Deep creek and down the channel of Kaweah river
below the head of Deep creek; and at all times plaintiff may
hereafter maintain said dam at a height sufficient to allow
said last-named quantity of water to flow past the head of
Deep creek and down the Kaweah river before any shall be
allowed to pass into the head and down said Deep creek."
The conclusion of law upon the finding is that plaintiffs are
entitled to have and maintain in the head of Deep creek "the
rock dam that is now therein to the height or depth of two
and one-half feet, of sufficient height to allow to pass down
the Kaweah river and past the head of Deep creek a stream
of water"—and then follows the amount of water to be meas-
ured by the mathematical formula as before given in finding
18. In subdivision 1 of the judgment it is decreed "that
plaintiffs are entitled to have and maintain in the head of
Deep creek the rock dam in controversy in this action to the
height or depth of two and one-half feet, of sufficient height
and so located as to allow to pass down the Kaweah river and
past the head of Deep creek"—and then follows a description
of a stream of water and the mathematical formula before
stated; and by subdivision 2 of the judgment it is decreed that
plaintiffs have a perpetual injunction restraining defendants
"from tearing out or removing said dam, or any part thereof,
built in the bed of said Deep creek as hereinbefore found and
allowed in said findings as above mentioned."

There was evidence sufficient to justify the findings that
the bed of Deep creek is naturally higher than the bed of
the river, and that appellants wrongfully lowered the same.
But appellants contend that the above-mentioned findings, so

far as they undertake to establish the size, contour, roughness, grade, velocity, etc., of the river and the specific quantity of water which respondents are uniformly entitled to have flow down the same past the head of Deep creek, are outside the issues and unwarranted by the allegations of the complaint, and that the judgment, being founded on these findings, is for the same reason unwarranted and invalid; and, furthermore, that under any view the findings on these points are too uncertain to sustain the judgment, and that the judgment is invalid for want of certainty as to the height at which respondents may maintain the dam; and we are of opinion that these contentions must be sustained.

The averments of the complaint are simply that the bed of Deep creek at its head is naturally more than three feet higher than the bed of the river at that point, so that, of course, no water would naturally flow into Deep creek until it was more than three feet deep in the river; that appellants wrongfully lowered the bed of Deep creek to the level of the natural bed of the river, so that the water at any stage would flow into Deep creek; that respondents had erected the dam so as to restore the natural conditions, and that appellants threatened to remove the same. There are no averments as to any specific quantity of water to which respondents are entitled, or as to the width of the river, or its velocity, grade, etc.; and the purpose of the action, as set forth in the complaint, is merely to have the two streams restored to and maintained in their natural relative conditions, so that the waters of the river shall flow in their natural and accustomed manner past the head of Deep creek. Indeed, respondents seem to have always taken this view, for the record shows that, in objecting to certain evidence, they said: "This is a suit to determine the height of the bank of the Kaweah river at the head of Deep creek, and any issue in regard to water should not be taken in consideration in this case"; and in their brief they say "this is not an action to determine the quantity of water to which the parties are entitled." It is no answer to this objection to say that the purpose of that part of the judgment which relates to the quantity of water, etc., was merely to fix the height of the dam; for, even if that construction could be given to it, the character and effect of the judgment would not

be thereby changed. But the various provisions in the findings and judgment about the quantity of water and the methods of calculating it constitute the principal thing, and the height of the dam is the incident. It is true that two and a half feet is mentioned once or twice as the height of the dam to be maintained by respondents; but it is found that "said dam should be only of sufficient height to allow a stream of water"—described as aforesaid—to pass down the river, and that "at all times plaintiff may hereafter maintain said dam at a height sufficient to allow said last-named quantity of water to flow past the head of Deep creek and down the Kaweah river before any shall be allowed to pass into the head and down Deep creek." The height of the dam is not fixed, but is to be regulated by the amount of the water, and may be kept high enough—whether two and one-half feet high or higher—to allow a volume of water, to be calculated as stated, to pass down the river. No provisions are made for any natural change of conditions—as, for instance, the elevation of the bed of the river by natural causes—but the two streams appear to be treated as if they were artificial ditches instead of natural watercourses. It is found that "at all times plaintiffs may hereafter" maintain the dam high enough to satisfy the requirements of the findings concerning the water. The judgment follows these findings, and as the findings and the parts of the judgment which follow them are outside the issues and unwarranted by the complaint, it is unnecessary to notice appellants' contention that those parts of the findings, including the mathematical expression, which attempt to deal with the water, are themselves so uncertain that it cannot be determined therefrom what volume or quantity of water is directed to be carried past the head of Deep creek.

But respondents contend that if the findings and judgment touching the volume, etc., of the water are unwarranted, they may be entirely disregarded and the findings and judgment will still be sufficient and complete. This might be so if the findings and judgment fixed and decreed with any certainty the actual height at which the dam may be maintained; but they do not. It is found that the height of the present dam is more than two and one-half feet, but how much more is not found. If the actual height of the present dam had been

found, the court, perhaps, might have properly decreed that it be lowered to the extent of the difference between its present height and the height of two and one-half feet; or, perhaps, a permanent monument could have been designated which would definitely fix the height to which the dam might be maintained; or, if the base of the dam from which the two and one-half feet should be measured had been fixed, there might have been some certainty in the judgment. But in the first place, as before stated, there is not even any general provision that the dam shall be only two and one-half feet high, for its height is to fluctuate to meet the requirements of the volume of water; and, in the second place, neither the bottom nor the top of the two and one-half feet is given. It was apparent from the evidence that at the time of the wrongs alleged to have been committed by appellant the bed of the river had been elevated from natural causes, and there is no finding as to the height of the bed at that time, and no finding as to the level from which the two and one-half feet is to be measured. It would be impossible for the parties to know what their rights are under the judgment; and the controversies which would inevitably ensue could not be determined by any data provided by the decree. The findings, therefore, are too uncertain to support the judgment, and the judgment is itself invalid for uncertainty. As to the appellants, the judgment and order appealed from must be reversed.

We do not think that any of the other contentions of appellants can be maintained, unless it be the contention of Bliss that there should have been a finding as to his ownership of land on Deep creek, and that there ought to have been an express decree giving him an injunction restraining respondents from maintaining the dam at any greater height than they are entitled to maintain it. These matters do not seem to have been very important under the findings of the court; but if on another trial the court should find substantially as above, there ought to be a finding as to Bliss' ownership of the land set forth in his cross-complaint, and while under a judgment in form like the present one he would probably be entitled to contempt proceedings if respondents should keep their dam too high, it would be well enough to expressly decree an injunction to meet such contingency. We do not

think that the court erred in rejecting evidence offered by Bliss as to alleged diversions of water by respondents above the head of Deep creek, or in rejecting evidence offered by appellants as to alleged diversions of water from the river below the head of Deep creek by the Tulare irrigation district; as to the former offer, the alleged diversion of water is not germane to this action, the purpose of which is merely to restore the natural conditions of the two natural watercourses at the head of Deep creek; and as to the latter offer, it is sufficient to say that the alleged diversion of water from the river below the head of Deep creek was entirely irrelevant and immaterial. Nor do we think that any error was committed in rejecting the offered testimony of the witness Jordan to the effect that the bed of the river had filled up at points three miles above and a mile and a quarter below the head of Deep creek; no evidence as to the filling of the bed of the river at the head of Deep creek was rejected. There was sufficient evidence to support the finding that respondents had not widened or lowered the channel of the river. We think that the foregoing are all the points made by appellants which call for notice.

In the judgment there is an adjudication of certain rights to the waters of Deep creek as between the defendant the Tulare Irrigation Company on the one side, and the defendants Swall and James and Cora Morton on the other; and as this adjudication does not affect the other parties, and is not appealed from, that part of the judgment will not be disturbed.

As a great deal of evidence was introduced in the court below which evidently made the litigation there quite expensive, it is unfortunate that we cannot order the judgment to be modified and thus avoid the necessity of a new trial; but although we have endeavored to reach that result, we have not been able to discover anything in the findings as they now stand that would warrant us in directing a new and different judgment. But although the parties will necessarily have the right to litigate anew the issues as to how much, if any, the appellants have wrongfully lowered the bed of Deep creek, what are the relative heights of the beds of the two streams, and how high the dam should be maintained, if at all, in order to restore the natural conditions, still the evidence on those points might be confined within moderate bounds, and the

parties, if they desire to save expense, could by stipulation introduce much of the evidence given at the former trial without recalling the witnesses. Of course, some additional evidence will be necessary to enable the court, if it again finds on these issues adversely to appellants, to fix the height of the dam with exactness and certainty; but whatever the consequences may be, we are compelled, under our views of the case, to reverse the judgment and order denying a new trial, so far as they affect the appellants herein.

The judgment, so far as it is against the appellants, is reversed; the order denying their motion for a new trial is also reversed, and the court below is directed to retry the case as to appellants in accordance with the views expressed in this opinion.

Temple, J., and Henshaw, J., concurred.

Hearing in Bank denied.