[Civ. No. 8168.    Third Dist.    Sept. 29, 1953.]

WILLIAM HUGH BERTRAM, Appellant, v. THE DANISH CREAMERY ASSOCIATION (a Corporation), Respondent.

Matt Goldstein for Appellant.

Dearing, Jertberg & Avery, Gilbert A. Jertberg and Hansen & Hansen for Respondent.

PEEK, J.—This is an appeal by plaintiff from a judgment of nonsuit. Two causes of action were alleged in plaintiff's complaint, one for an alleged balance due to him for milk delivered to defendant, and the other upon an open book account arising out of the same transaction.

The evidence produced by plaintiff in support of his complaint shows that he has been a member of defendant association in good standing since November, 1935. He is a producer of Grade "A" milk which he distributes by means of delivery routes to retail customers in the city of Chowchilla. All milk not necessary for his retail customers was delivered by him to the association. The defendant is a cooperative nonprofit marketing association organized under the laws of this state in December, 1921. By its charter it is authorized, among other things, to buy, sell and deal in all dairy products. Its bylaws set forth rules of eligibility for membership in the association, and provide that the business of the association shall not be carried on for profit to itself but it may conduct its business for profit to its members; that no member may hold more than one certificate of membership; that the voting power of each member shall be equal as shall be the property rights of each of the members of the association. In regard to the powers of the Board of Directors it is provided that all of its corporate powers, business and property shall be exer-

cised, directed and controlled by its board, which shall have power to conduct and manage the business affairs of the association, and make rules and regulations not inconsistent with the laws of the state or bylaws of the association. No provision is made in either the articles or bylaws whereby the association obligates either the member to deliver or the association to accept any or all of the member's production of milk or milk products.

The action of the board which gives rise to the present controversy was a resolution regularly passed wherein it was provided that "the management be instructed to notify all producers sending Grade 'A' *as their surplus,* that beginning January 1, 1950, their milk will be received as Grade 'B' milk." (Emphasis added.) Pursuant to this resolution the general manager of the association mailed to plaintiff a letter wherein he was informed that

"To conform with the established practice of paying manufacturing price for surplus milk received from Grade 'A' distributors, the Board of Directors at their regular meeting on November 22, instructed us to inform you that effective January 1, 1950, the manufacturing price will be paid for all milk which we receive from you. This milk will be used for manufacturing purposes.

"The action was taken to make uniform and offer to all like shippers the same payment plan.

> Very truly yours,
> Danish Creamery Association."

Following the receipt of this letter plaintiff made no formal protest or otherwise communicated with the board. However, at the trial he testified to a conversation with the president of the board to the effect that the board's action was discriminatory, was violative of his rights as a member to equal terms with those given to all other members; that he had the right to ship his milk to the association; that he would continue to ship his milk to the association and that he would attempt to collect for it. From January 1, 1950, to July 15, 1950, plaintiff continued to deliver his surplus Grade "A" milk to the association, and in accordance with said resolution was paid Grade "B" prices. He thereafter filed his complaint seeking to recover the balance alleged to be due. Defendant's answer admitted plaintiff's allegation concerning the rights of each member in the association and alleged affirmatively that there was nothing in the corporate charter

or bylaws obligating either the members to deliver, or the association to receive, any milk or milk products, nor was there any separate contract between plaintiff and defendant establishing such obligations. At the trial the parties stipulated that there was no such agreement existing between the association and its members. The only testimony presented at the hearing was the testimony of plaintiff heretofore summarized. In addition three exhibits were introduced, plaintiff's certificate of membership in the association, its articles of incorporation and its bylaws. The letter notifying plaintiff of the change in policy was introduced as defendant's exhibit during the cross-examination of plaintiff. Upon this evidence plaintiff rested and defendant's motion for nonsuit was made and granted.

Quoting from plaintiff's brief, two questions are raised by him on appeal.

"1. Was the resolution of November 22, 1949 violative of the rights of the plaintiff as a member of the defendant Association?

"2. Did the Court err in granting the defendant's motion for a nonsuit?"

He argues in regard to the first question that "the resolution, in effect, created a group of members of the Association who were treated differently from other members delivering similar products to the Association and that this constituted an unfair and unlawful discrimination against the property rights of the plaintiff as a member of the Association."

In view of the stipulation of the parties that there was no agreement between plaintiff and defendant, plaintiff, to maintain his action, had the burden of showing some right to continue to deliver and thereby force the association to accept whatever amount of milk he chose to deliver to it. However, the record shows that the successful operation of the defendant association was in no way dependent upon contractual obligations but to the contrary was predicated wholly upon a voluntary relationship between the association and its members. Thus it necessarily follows that since nothing in the bylaws, articles, nor any contract bound the association to take, or any member to deliver, any milk, the association was free to deal with its members on any reasonable basis; and in so doing could apply different conditions of purchase as to members where, in the interest of the association, there existed reasonable and natural grounds for such

varying conditions. The association was not bound to treat each member exactly as it did all the others when to do so would be a detriment to the association. It may be conceded it could not unfairly discriminate but it could discriminate. (*Mooney* v. *Farmers' Merc. & Elev. Co.*, 138 Minn. 199 [164 N.W. 804].)

■ It remains then to determine whether the resolution under attack was a proper exercise of the powers of the board of directors in the management of the affairs of the association and if said resolution was in anywise unfairly discriminatory as to plaintiff. As previously noted, the bylaws gave to the board the management and control of the business of the association and, as a necessary adjunct of said power, to make any and all rules and regulations necessary for the successful operation of the association not inconsistent with the bylaws or the laws of this state. We conclude that the resolution was a proper exercise of the powers so conferred upon the board. It did not create a new class of member as plaintiff contends. It merely set forth a reasonable procedure to be followed in all cases where surplus Grade "A" milk was delivered to the association; the result being that all Grade "A" producers who chose to deliver their surplus production would be paid at Grade "B" prices. Thus, a member who chose to follow such procedure was treated equally with all other members who likewise chose to deliver surplus Grade "A" milk to the association. Therefore it cannot be said that the resolution did not operate equally upon all persons in that particular class: to wit, producers of surplus Grade "A" milk. (*Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.*, 111 Cal. App. 688 [296 P. 933].)

From the record before us it is apparent that plaintiff failed to prove facts necessary to entitle him to a judgment, and therefore the trial court properly granted defendant's motion for a nonsuit. (*Raber* v. *Tumin*, 36 Cal.2d 654 [226 P.2d 574].)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.