## MILK PRODUCERS, INC. *v.*
## Mrs. Dale CAMPBELL

5-5355                         459 S. W. 2d 114

### Opinion delivered November 2, 1970

*Thompson & Thompson,* for appellant.

*Howell, Price, Howell & Barron,* for appellee.

Conley Byrd, Justice. Appellant Milk Producers, Inc., (MPI) is a milk producers marketing cooperative that came into existence about Sept. 1, 1967, as a result of merger of a number of other milk producers marketing cooperatives, including Central Arkansas Milk Producers Association, Inc., (CAMPA). The appellee, Mrs. Campbell, and her husband had been members of CAMPA marketing cooperative for a number of years and some time in June of 1967, signed a proposed membership agreement with MPI which was accepted by MPI around Sept. 1, 1967. After May 1, 1968, MPI adopted a base and overbase plan that went into effect August 1, 1968, applicable only to members producing milk as of April 30, 1968. The trial court ruled that Mrs. Campbell was entitled to assignment of a permanent Class One base of 2,500 pounds of milk per day although she was not in production on April 30, 1968.

The record shows that CAMPA, the predecessor of

MPI, calculated the base for sale of milk without a penalty, on the production from September through March of each year and that MPI continued this base until its Class One base and overbase , plan went into effect on Aug. 1, 1968. The Class One base allotment has a market value of between $8.00 and $10.00 per pound among the producers in the area involved.

Mrs. Campbell testified that she and her husband had been members of CAMPA and had marketed their milk through it up until her husband's death in 1966. She continued to operate the dairy until Sept. 18, 1967, at which time she sold her producing cows but saved about 70 heifers to be freshened later. When she sold her producing cows she rented her base to Roy Minton for the period from Sept. 1967 to July 1968. After her base was transferred to Mr. Minton she received no notices from CAMPA or MPI. In fact she testified that she was never notified that MPI accepted her membership contract. Since the Class One base is calculated on the highest production during 1966 or 1967, her base, if assigned, would be 2,500 pounds per day, having a value of $9.00 per pound. On July 1, 1968, she made a request to go back into the marketing of milk through CAMPA or MPI. The membership agreement signed by Mrs. Campbell with MPI provides in part:

(7) "Member agrees to conform to and observe the By-Laws of the Association now in force and effect, and any change or amendment that may hereafter be made in or to said By-Laws of the said Association, and agrees that the Board of Directors of Association may prescribe reasonable rules and regulations relative to the production, handling, testing, delivering, hauling, and charges for service in the marketing of milk or dairy products produced by Member, or other Members of the Association entering into like agreement with Association. Member agrees to be bound by and to comply with such rules and regulations. Member further agrees that the Board of Directors shall have the right to adopt and enter into with others from time to time, a

marketing plan or plans for the marketing of milk or dairy products of Association, containing such provisions in relation to the pooling of milk or dairy products or the proceeds of the sale thereof, or equalizing the cost to different distributors or price to different members, or providing through variations in price, incentives to producers to maintain a steady supply of fluid milk to meet the requirements of the market, and any other provisions usual or customary in such marketing plan, or plans, as may be deemed advisable by the Board of Directors. The member hereby agrees to faithfully comply with any such plan, or plans, and any modification thereto, which may now be in effect or hereafter entered into."

Testimony of MPI's management personnel shows that the dues supporting the association are collected from the current milk producers and deducted from the milk payments. These records are kept by an IBM system. When a member goes out of production his name is placed on an inactive list. Admittedly, persons currently producing milk received notices of the informal discussions held prior to April 30, 1968. At these meetings, widely attended by the producing members, the management personnel discussed the proposed Class One base plan and overbase plan and informed the members that if adopted the plan would be applicable to persons in production on April 30, 1968. Admittedly Mrs. Campbell, being an inactive member, did not receive a mailed notice of such discussions.

When it developed on the first hearing in this matter that Mrs. Campbell had not exhausted her intercorporate remedies, the trial court held the cause in abeyance while Mrs. Campbell pursued those remedies. Thereafter, through an intercorporate appeal, MPI tendered to Mrs. Campbell as a hardship case the opportunity to market her milk through MPI on the following basis:

"1. She will be paid the Arkansas Division base

price, minus 25 cents per hundredweight for the quantity of milk calculated by multiplying her total deliveries of Grade A milk each month by 80%, with the remaining 20% of her deliveries being paid for at the over-base price.

2. This schedule of payments will continue for the first sixty months that she produces and delivers Grade A milk to MPI. For the 61st pay period and thereafter, she will be allocated permanent transferable base calculated on the basis of her average daily deliveries during this period of time not to exceed 80%."

Mrs. Campbell declined to accept the 80-20 ratio used in the calculation of the Class One and Class Two milk and reinstated her petition for the assignment of a permanent base. The trial court ruled that Mrs. Campbell should be placed in the position she would have been in as to permanent base had she been notified and had the opportunity to select a permanent base as did the producers who were notified. Mrs. Campbell points out that if she had been notified of the meetings she could have bought some cows and gone back in production and thus have qualified for assignment of base. In this connection she points to paragraph 9 of her agreement which provides:

"(9)  Unless this agreement is cancelled as provided in the By-Laws of the Association, the same shall continue in full force and effect for successive periods of one (1) year from the date of this contract; provided, however, that cancellation of the same may be made by written notice by either of the parties given between one (1) and sixteen (16) days preceding any anniversary date after the first anniversary date of this contract; such cancellation shall become effective on the last day of the second successive calendar month following the month in which such notice is given."

The record shows that there was 145 other inactive

members in the same situation as Mrs. Campbell who received no notice of the informal discussions at which the April 30th deadline was explained in connection with the proposed base plan.

As we read the membership agreement between MPI and Mrs. Campbell, it is basically a marketing agreement for the benefit of persons producing Grade A milk for distribution. The record shows that the association is supported only by dues withheld from milk payments made to producing members. Here the record shows that MPI, for purposes of determining with whom it should discuss its management policies, classified its members as dues paying members or non-dues paying members. Cases from other jurisdictions hold that in absence of anything to the contrary in the association charter or by-laws or in the contract between the association and its members, a cooperative association is free to deal with its members on any reasonable basis. See *Bertram* v. *Danish Creamery Association*, 120 Cal. App. 2d 458, 261 P. 2d 349 (1953); 18 Am. Jur. 2d *Cooperative Associations* § 19. We cannot say that MPI's classification was unreasonable.

For the reasons indicated the order of the trial court is reversed.