A. M. SHARON, DEFENDANT IN ERROR, v. KANSAS CITY GRANITE & MONUMENT COMPANY, A CORPORATION, PLAINTIFF IN ERROR.— 125 S. W. (2d) 959.

Kansas City Court of Appeals. January 9, 1939.

*Burns & Woods* for plaintiff in error.

*Thurman L. McCormick* and *Herman I. Epstein* for defendant in error.

CAMPBELL, C.—Defendant in error, hereinafter called plaintiff, brought this suit against the plaintiff in error, hereinafter called defendant, to recover damages for the alleged conversion of 15 shares of capital stock in the defendant company. Plaintiff had a verdict and judgment in the amount of $3000. Defendant obtained a writ of error to review the record of the trial court.

The evidence shows the defendant, a Missouri corporation, on February 12, 1912, issued to A. M. Smith, its president, certificate No. 12 for 10 shares of its capital stock; that defendant issued certificate No. 13 for 5 shares of its capital stock to its secretary, D. J. Smith, on February 9, 1914; that in 1912, S. P. Sharon, brother of plaintiff, became the owner of a note executed by A. W. Smith, the payment of which was secured by said certificate No. 12; that thereafter A. W. Smith delivered both of said certificates to S. P. Sharon in payment of the balance of the note. The printed blank for the assignment of certificate No. 12 on the back thereof was signed A. W. Smith. The same blank form of assignment on certificate No. 13 was signed D. J. Smith. The latter certificate was signed on its face by D. J. Smith as defendant's secretary. (Thereafter, "in about 1916," S. P. Sharon delivered the certificates to plaintiff in payment of his note held by the latter.) In June, 1930, plaintiff caused the certificates to be presented to the defendant and its attorney and demanded that the stock represented by the certificates be transferred to him on the books of the defendant. The demand was refused. On June 13 defendant's attorneys wrote to plaintiff's attorneys stating they understood the stock, the transfer of which had been demanded, was formerly held by Mr. Smith; that more than 18 years prior thereto evidence was furnished to the defendant that "this stock" had been destroyed; that new stock was issued, which was then in the hands of other persons, "you ought to furnish us evidence upon which you base" claim of right to a transfer of the stock "so we can tell just where we stand."

There was expert opinion evidence to the effect that the signature D. J. Smith on the face of certificate No. 13 was written by the person who wrote D. J. Smith on the back of that certificate. The certificates and assignments thereof were received in evidence without objection. Neither S. P. Sharon nor plaintiff presented the certificates to defendant for transfer until in June, 1930.

D. J. Smith testified in deposition, introduced by defendant, that she and her husband, A. W. Smith, lived in Kansas City until 1926 and then moved to another state; that her husband died some 3 years prior to the time of the taking of her deposition; that the signature D. J. Smith on the back of certificate No. 13 was not her signature,

that she was the owner of that certificate, and that the signature on the face of the certificate was her signature.

The defendant's witness, Guidici, testified he had been connected with defendant since 1910. He identified the stub of certificate No. 12, the defendant's stock book, said it had been in that book to his knowledge since about 1914. The stub was excluded from the evidence. It appears, however, that A. W. Smith wrote on the stub the following: "This certificate was destroyed by fire or lost. A. W. Smith."

The answer on which the cause was tried alleged that certificate No. 12 "sued upon" was issued to one A. W. Smith; that in February, 1914, Smith, who was then president of the defendant, represented to it that said certificate was lost or destroyed and thereupon it issued duplicate certificates "in lieu of said stock at said time, and cancelled said certificate No. 12;" that said stock so issued was now in the hands of persons who acquired the same in good faith; that in June, 1930, certificate No. 12 "aforesaid" was presented to it and demand made that said stock be transferred to plaintiff herein; that defendant and its counsel, both before and after June, 1930, because of the facts set forth in the answer, demanded of plaintiff that he furnish proof of ownership of said certificate No. 12, and that plaintiff failed to make such proof; that if plaintiff were ever entitled to a transfer of said stock to himself his right was barred for the reason that it had been more than 5 years since said duplicate certificates were issued and certificate No. 12 cancelled; that plaintiff and his transferors knew of "contrary claims" to the stock and had known thereof since 1916; that if plaintiff or his transferors had any title or interest in the certificate plaintiff was now estopped to assert the same for the reason that he negligently failed to present a claim therefor for a period of more than 5 years before he brought this suit, and negligently permitted said stock to be transferred to innocent holders for value and negligently deferred his demand until witnesses had died who could explain the facts and circumstances concerning said certificate No. 12; that defendant believes that neither plaintiff nor his transferors had legal title to the stock; that if the 10 shares of stock had been transferred as was requested by plaintiff in 1930, an over-issue of stock would have resulted; that plaintiff had never furnished to the defendant proof that he was the owner of the stock and that defendant does not believe that he had any right or interest in certificate No. 12; that certificate No. 13 was issued to D. J. Smith on February 9, 1914; that when demand for the transfer thereof was made by plaintiff, defendant requested plaintiff to submit proof that he was the owner thereof and entitled to a transfer but plaintiff failed and refused to do so; that said certificate No. 13 had never been transferred or assigned or endorsed by D. J. Smith; that plaintiff claims to have held said certificate for

more than 10 years since he acquired the same; that he never asserted title or interest therein and negligently failed to present said stock to the defendant for a period of more than 10 years, on account of which he lost any right he had in the stock. The answer concluded with a general denial.

The claim that plaintiff had no cause of action because he failed to submit evidence showing that he was the owner of the certificate applies with equal force to both certificates. This contention overlooks the fact the certificates were in the possession of the plaintiff, appeared to be properly assigned by the persons to whom they were issued. Thus plaintiff furnished *prima facie* evidence that he was the owner of the shares. [14 C. J. 481; Vanstone v. Goodwin, 42 Mo. App. 39, 49; Mitchell v. Newton County Bank, 220 Mo. App. 223, 282 S. W. 709; Luitweiler v. Luitweiler, 192 N. Y. Supp. 894.]

It later appeared that defendant in its answer claimed it had cancelled certificate No. 12 in 1914; that through negligence, failure to present the certificate at an earlier time, plaintiff was estopped to claim he owned the shares; that through lapse of time plaintiff lost whatever interest he had in the certificate, and had also lost whatever interest he ever had in certificate No. 13 because he had not asserted title or interest therein and negligently failed to present the certificate to defendant for a period of more than 10 years after he claimed to have acquired the same. Evidently the defendant, as shown by the letter of June 13, knew it was contending that the stock claimed by plaintiff had been lost and "new" stock issued to other persons and that thereby plaintiff had lost all interest in the certificates.

The letter of June 13, applied to *both* certificates.

It is plain the defendant from the beginning was determined not to recognize plaintiff as the owner of either certificate. On these facts plaintiff was not required to furnish more proof than he did with respect to his title in the certificates.

In this connection it must be remembered the assignment of certificate No. 12 bore the signature of A. W. Smith, defendant's former president; that the assignment of certificate No. 13 bore the signature of D. J. Smith, defendant's former secretary. In June, 1930, defendant must have had many signatures of its said officers from which it could readily have ascertained whether or not the signatures on the assignments were genuine; and it is significant that defendant did not *at any time* question the genuineness of the signature of A. W. Smith, nor did it question the genuineness of the signature of D. J. Smith until it filed its answer.

The claim that A. W. Smith, by writing on the stub of certificate No. 12 that the certificate was lost or destroyed, and by issuing new certificates in lieu thereof, thereby converted the stock in 1914 and hence it "was a legal impossibility for the corporation to convert this

stock in 1930 as far as this plaintiff was concerned,'' cannot be sustained.

There was no provision in the certificate requiring the owner or holder thereof to present the certificates for transfer. The provision in that respect was that the stock was transferable only on the books of the defendant upon surrender of the certificate "properly endorsed." The holder of the certificate was under no legal duty to present it for transfer at any time. [Mitchel case, *supra*; Kellar v. Eureka Brick Mfg. Co., 43 Mo. App. 84.]

The defendant held its property in trust for its stockholders. Plaintiff had right to believe the defendant would not assert a claim adverse to his rights as a stockholder, hence the Statute of Limitations was not put in motion until plaintiff or his transferor was "notified by some unequivocal act that his right to the stock" was disputed. [Owensville & Mt. S. Turnpike Road Co. v. Bondurant's Adm'r, 54 S. W. 718; Rice v. Pacific Railroad, 55 Mo. 146.] Neither plaintiff nor his brother had notice or knowledge of the wrongful acts of Smith in 1914. Not until in June, 1930, did plaintiff or his brother have cause to believe that defendant would claim the holder of the certificate was not a stockholder. Therefore, the Statute of Limitations did not operate until his right as a shareholder was disputed in June, 1930. The allegation in the answer that defendant cancelled certificate No. 12 was disproved. Defendant could not, as a matter of law, cancel the certificate for the reason the certificate was not in its possession nor did it have right to the possession thereof.

The defense of limitation and estoppel urged as to certificate No. 12 are in effect the same as those made in respect to certificate No. 13 and for the same reasons are ruled against defendant.

The contention there was no evidence showing that D. J. Smith executed the assignment of certificate No. 13 must be disallowed. The certificate and assignment thereof were introduced by plaintiff and received in evidence without objection. Thus the court and jury had the right to believe the defendant was not claiming that the assignment was not what it purported to be, namely, the act and deed of D. J. Smith. [Bartlett v. O'Donoghue, 72 Mo. 563, 564.]

Furthermore, there was expert evidence from which the jury could find that D. J. Smith executed the assignment. So in no event can the contention that plaintiff failed to prove due execution of the assignment be sustained.

Plaintiff's instruction No. 1 is criticized for the following reasons: (1) Failed to require the jury to find certificate No. 13 was delivered to plaintiff's brother by authority of D. J. Smith; (2) failed to require the jury to find that the failure of defendant to transfer the certificates was wrongful; (3) failed to recognize the defense that plaintiff "refused or failed to furnish proof of authority to transfer ownership and genuineness of the endorsement on the certificates

in question when requested by defendant;'' (4) failed to require the jury to find plaintiff was the owner of the certificates at the time demand for transfer was made.

The instruction did not allow plaintiff to have the verdict unless the jury found that certificate No. 12 was endorsed by A. W. Smith; that certificate No. 13 was endorsed by D. J. Smith; that thereafter A. W. Smith delivered the certificates to S. P. Sharon, and that the latter thereafter delivered said certificates to plaintiff; that said certificates were presented to defendant in June, 1930, for transfer and that defendant refused to make the transfer.

There was no question of agency in the case; no claim that A. W. Smith was acting on behalf of D. J. Smith, and it would not have been proper to submit such a question. The instruction did not submit the question as to whether or not the refusal to transfer was wrongful by using the word ''wrongful,'' but it required the jury to find facts from which it would necessarily follow that the refusal was wrongful.

There was no basis for a claim that defendant acted in good faith in refusing to transfer certificate No. 12, and it made the same requirement concerning that certificate which was made in reference to the other certificate.

The instruction is further criticized for the reason it contained the following language: ''and you further find that A. M. Sharon had no knowledge or notice of any claims to certificate No. 12 and certificate No. 13 in opposition to his claim of ownership for more than 5 years before December 27, 1930.''

Defendant claims the quoted language mislead the jury into believing the certificates were the stock. The certificates, strictly speaking, were not the stock. In common parlance they are understood to be the same. Certainly no qualified juror would be mislead by the use of the word ''certificates'' instead of the phrase ''stock represented by the certificates.'' The question of limitation was not in the case.

Plaintiff's instruction No. 3 is criticized for the reason it told the jury that the signature of D. J. Smith appearing over the word secretary, on the face of certificate No. 13, should be taken and considered as the genuine signature of D. J. Smith. The uncontradicted evidence of both plaintiff and defendant was to the effect that D. J. Smith signed her name on the face of that certificate as secretary of defendant. In passing on the question, if there were such a question, as to whether the disputed signature on the assignment was or was not genuine, the jury had the right to compare that signature with the admitted signature.

Plaintiff's instruction No. 4 told the jury that possession by plaintiff of certificate Nos. 12 and 13, endorsed by the parties named therein, ''if you find and believe said certificates were so endorsed,''

was *prima facie* evidence of the ownership of said certificates by the plaintiff.

The instruction was not improper for the reason hereinbefore stated.

Instruction No. 5 for plaintiff, on the measure of damages, advised the jury the element to be taken into consideration in estimating the damages, if any, "together with all other facts and circumstances shown in the evidence." The defendant argues the quoted phrase of the instruction gave the jury a roving commission and authorized it to consider improper matters in fixing the damages. There is nothing in the record indicating the jury was prejudiced or unduly influenced for or against either party. There is no claim the verdict was excessive. While the phrase had no place in the instruction it was not prejudicial and will not cause reversal. [Sallee v. St. Louis-San Francisco Ry. Co., 321 Mo. 798, 807, 12 S. W. (2d) 476.]

Defendant's refused instruction No. 11 would have told the jury that certificate No. 13 was withdrawn from further consideration.

The claim this instruction should have been given for the reasons there was no proof that D. J. Smith endorsed the assignment; no proof A. W. Smith was her agent; that it is undisputed plaintiff failed to furnish proof of his right to have the stock transferred.

These questions have hereinbefore been discussed and ruled adversely to the defendant and, therefore, need no further discussion.

Complaint is made of the refusal of defendant's requested instruction No. 12. This instruction said the burden of proof was on plaintiff to prove by a preponderance of the evidence that D. J. Smith endorsed certificate No. 13 and that if plaintiff had failed so to prove, then the verdict would be for defendant on said certificate.

Defendant obtained instruction No. 8 in which the jury was told the burden was on plaintiff to prove his case by the greater weight of the credible evidence and that if the jury found plaintiff has failed to so prove his case, then the verdict must be for the defendant.

Considering the fact that plaintiff's instruction No. 1 required the jury to find that D. J. Smith endorsed certificate No. 13 and that the instructions must be read together, we think the giving of defendant's instruction No. 8 cured any error in the refusal of instruction No. 12.

Defendant's instruction No. 13 would have told the jury that if it found "that the signature on the back of the certificates sued upon, *or either* of them, was not the genuine signature of the person to whom such stock was issued, . . . then your verdict must be for the defendant." (Italics ours.) Manifestly, infirmity in the assignment of one of the certificates would not warrant a finding against the other certificate. The several clauses in the instruction

were connected by the disjunctive or, and if any one of them were erroneous it was the duty of the court to refuse the instruction.

Defendant's instruction in the nature of a demurrer to the evidence was properly refused for the reasons above stated.

The defendant offered to prove by introducing its stock book that about February 7, 1914, it issued certificates Nos. 20, 21, and 22 in lieu of the stock represented by certificate No. 12. The certificates were also offered in evidence. The offers were refused. It is the defendant's claim it converted plaintiff's stock by issuing the certificates in February, 1914. If the law would permit officers of a corporation to secretly make false entries on the corporate record, issue false certificates to themselves, conceal their wrongs for a period of 5 years and thus destroy the value of valid certificates of stock, corporate stocks would have little or no value. We refuse to subscribe to such a doctrine.

Certificate No. 20, for 8 shares, was issued to R. D. Guidici, secretary of the defendant; certificate No. 21, for 1 share, was issued to A. W. Smith, president of defendant; certificate No. 22, for 1 share, was issued to the witness, Guidici, who was "connected" with the defendant. The words "cancelled Oct. 30, 1916" were written across the face of each certificate.

The defendant was not hurt by the exclusion of these offers. This evidence, had it been admitted, would have shown that the certificates were issued wrongfully, were thereafter cancelled and returned to the defendant; that certificate No. 12, held by plaintiff, was the only certificate outstanding which represented the 10 shares called for by it; that the stock represented by that certificate was not claimed by any one other than plaintiff; that the certificates issued in lieu of certificate No. 12 were not in the hands of *bona fide* holders as alleged in the answer.

Defendant offered and the court excluded four notes which were assumed to have been executed by the defendant. It is the defendant's theory these notes were its obligations and, therefore, affected the value of the stock. The notes were in the possession of the defendant from which it may be inferred the notes were paid. There was evidence these notes were unpaid "in 1930," but there was no evidence they were not paid prior to June 13.

An accountant who examined books and records of the defendant and its copy of its federal income tax return relative to its assets during the year 1930, testified that as thus shown defendant's net worth was $50,031.18. The evidence was admissible as tending to show the value of plaintiff's stock. The accountant also testified the net worth of the defendant in 1926 was $26,227.84; that according to the rule adopted by accountants the good will of the defendant in 1930 was of the value of $50,000. The evidence concerning the value of the good will of the defendant was objected to "because of

the incompetency of the witness and the method by which he computed the alleged good will."

The witness was an expert accountant and competent to state the rule adopted by his profession upon which to calculate the value of good will, and his statement was based on that rule.

The plaintiff introduced the financial statement made by defendant's secretary to the Bradstreet Company, dated December 31, 1930. When the statement was mentioned defendant's counsel stated the minutes of a stockholders meeting "shows that a financial statement showing the condition of December 30, 1930, is read and approved." The objection to the statement to the effect that there was no showing the secretary had authority to make it was overruled.

Section 10 of defendant's by-laws provided its "secretary-treasurer" should keep record of corporate proceedings, have charge of transfer books and "also keep other books and perform other duties prescribed by the board." These facts taken in connection with the fact that the statement was made by one of defendant's chief officers was sufficient to allow the statement to be received in evidence. [Weber v. Joslyn, 102 S. W. (2d) 693.]

However, all of the evidence relating to the value of defendant's assets had no bearing on any question except the amount of the verdict in event the finding was for plaintiff, and as there is no complaint as to the amount of the verdict, the errors, if any, were harmless.

The defendant produced its Exhibits No. 17 and by opinion evidence proved that D. J. Smith signed said exhibit. It then offered the exhibit for the purpose of allowing the jury to compare the signature of D. J. Smith thereon with her alleged signature on the back of certificate No. 13. The offer was excluded. The genuine signature of D. J. Smith on the face of the certificate was before the jury for comparison with the questioned signature. The jury compared the signature on the face of the certificate with the disputed signature and found both signatures genuine. If comparing the disputed signature with the genuine signature failed to convince the jury that the questioned signature was not genuine, then comparing a signature, the genuineness of which was shown by the opinion of one witness, certainly would not have benefited defendant.

Defendant objected to the competency of S. P. Sharon to testify concerning the transaction which resulted in the sale and purchase of certificate No. 12 because the seller was dead.

This action is for damages for the alleged conversion of the stock in 1930. The right of action arose, if at all, when defendant refused to transfer the stock, Plaintiff's, assignor, had nothing to do with the pleaded cause of action: True, plaintiff's title in the certificate came through his brother, but the cause of action accrued directly to plaintiff. Plaintiff's predecessors in title were not parties "to

the contract or cause of action" involved in this controversy. Therefore, S. P. Sharon was competent to testify concerning the assignment of the certificate to him. [Section 1723, R. S. 1929.]

S. P. Sharon testified in effect that after he received the certificate from A. W. Smith he exhibited and sought to sell it to R. D. Guidici, and that the latter did not question or "chalange" his ownership of the stock. Objections to this evidence on the grounds that R. D. Guidici was dead were made after the questions, which elicited the evidence, were answered. This was too late. However, the witness was competent to testify to the transactions.

The cause was fairly tried.

The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. *Shain, P. J.,* and *Bland, J.,* concur; *Kemp, J.,* not sitting because not a member of the court when the cause was argued and submitted.