[S. F. No. 19089. In Bank. Dec. 27, 1956.]

OLIVE BENNETT et al., Appellants, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

542

L. L. James, Carl E. Day, Leander L. James III and Morris Lavine for Appellants.

Alexander S. Keenan, Jr., as Amicus Curiae on behalf of Appellants.

Tobin & Tobin, Sullivan, Roche, Johnson & Farraher, Brobeck, Phleger & Harrison and Moses Lasky for Respondents.

GIBSON, C. J.—Plaintiffs are seeking declaratory relief to determine their rights, if any, in the Hibernia Bank which, prior to 1947, was known as the Hibernia Savings and Loan Society. They claim as successors of Callaghan Curtin who, it is alleged, became a member of Hibernia on October 27, 1860. A general demurrer to the complaint was sustained without leave to amend, and plaintiffs have appealed from the ensuing judgment.

The complaint is very lengthy, and it contains a great deal of purely evidentiary matter; some of the allegations are inconsistent, others are ambiguous and uncertain, and our task would have been greatly simplified had the complaint been clarified on special demurrer. We have concluded, however, that the complaint, when liberally construed (Code Civ. Proc., § 452; *Treu* v. *Kirkwood,* 42 Cal.2d 602, 608 [268 P.2d 482]; *Hudson* v. *Craft,* 33 Cal.2d 654, 661 [204 P.2d 1, 7 A.L.R.2d 696]; *Jaffe* v. *Stone,* 18 Cal.2d 146, 153 [114 P.2d 335, 135 A.L.R. 775]), is sufficient as against the general demurrer.

## The Complaint

The principal allegations of the complaint may be summarized as follows:

Hibernia was organized in 1859 under an act which authorized the formation of corporations having capital stock and made no provision for corporations composed of members rather than stockholders. (Stats. 1853, p. 87.) By-laws were adopted which recited that the signers thereof agreed that the by-laws should govern them and determine their mutual duties, rights and privileges as members of the society. It was also provided that those who should sign the by-laws and "pay the entrance fee of two dollars, shall be styled and considered members of this Corporation. Those, who, in addition to the above, shall hold one or more shares of its Stock, shall further be styled and considered Stockholders." It was the intention of the incorporators that Hibernia should be conducted as a membership corporation, and the members alone exercised the right to vote, elect the trustees and amend the by-laws.

Curtin became a member of Hibernia on October 27, 1860, when he signed the by-laws, paid the entrance fee, made a deposit of $3,500 and received a passbook showing the amount of his deposit.

Some shares of stock were issued following incorporation, but none was issued after November 29, 1861. Between that date and June 27, 1863, all but four certificates for shares

were retired and cancelled, and thereafter the corporation was composed of members only, none of whom owned any stock. No dividends were ever declared or paid upon the stock of the corporation; instead, all dividends were paid to the members on their deposits.

On August 29, 1864, Hibernia elected to become incorporated under an act adopted in 1862 and amended in 1864 (Stats. 1862, p. 199; Stats. 1863-1864, p. 531) which provided that savings banks, including associations claiming in good faith to be incorporated under the laws of this state, could incorporate as savings banks without capital stock. A new certificate of incorporation was filed which stated that Hibernia should have no capital stock and that its affairs should be managed by a board of directors. On September 29, 1864, the directors, without a vote or consent of the members, and without consent of Curtin, purported to adopt new by-laws which stated that all prior by-laws were repealed. Article 4 of the by-laws provided that all persons who were members on August 29, 1864, ''shall be deemed and considered members of this corporation, and the signatures of such persons to an agreement on their part to become members of this corporation, and ratifying and confirming the incorporation of said The Hibernia Savings and Loan Society, . . . shall be procured as speedily as may be. Other persons may be allowed to become members of this corporation by a vote of the Board of Directors and not otherwise. Membership shall not pass with the ownership of moneys deposited with or under control of the corporation.''

Subsequent to August 29, 1864, and prior to January 18, 1871, Curtin signed the agreement provided for in the 1864 by-laws, by the terms of which he ratified the incorporation proceedings taken by Hibernia in 1864 and agreed to become a member of the corporation as it existed under the act of 1862. Those by-laws provided that the ''corporate powers'' should be exercised by the directors, and amendments were adopted by the directors from time to time. An amendment so adopted in 1868 provided that all persons who were members on August 29, 1864, and then had not less than $100 to their credit, and whose accounts were not subsequently closed, ''shall be deemed and considered members. . . . No one shall be deemed a member whose account is once closed.'' An amendment on January 18, 1871, provided that those who had signed the agreement to become members and who then ''had accounts open with said Corporation, shall be deemed and

considered the only members thereof at that date. . . . No one shall be deemed a member whose account is once closed.'' In 1886 an amendment was adopted which provided that a person shall cease to be a member ''who shall not have continuously and at all times, at least One Hundred Dollars to his or her credit upon an open deposit account on the books of this Corporation.''

In January 1909 Hibernia filed documents purporting to extend its corporate life for a further period of 50 years, and in March 1934 it filed other documents providing for perpetual existence of the corporation. The documents were executed by acting officers, directors and persons claiming to be members of the corporation; none of them was executed by Curtin, and neither he nor his daughter Mary had any knowledge of them.

Curtin maintained a deposit of at least $100 at all times from the opening of the account in October 1860 until April 1914, when he made a written assignment to Mary of all the moneys to his credit with Hibernia and she withdrew the balance on deposit, amounting to $363.54. He died several months later in September 1914. Mary was appointed executrix of Curtin's last will by the Superior Court of Santa Clara County, and his entire estate, including his membership rights in Hibernia, was distributed to her as sole legatee under his will. Mary died in January 1951, and a decree entered in 1952 ordered distribution to plaintiffs of the residue of her estate, which included the membership in Hibernia. Curtin's membership continued until transferred to Mary either by assignment or descent, and plaintiffs, as distributees of the estate of Mary, succeeded to all of the membership rights.

In October 1945 Hibernia filed an in rem suit to determine membership rights. The complaint named as defendants a number of individuals, together with all persons unknown claiming any right of membership, and alleged that, so far as Hibernia knew, the only persons who were members and had membership rights were 15 named individuals. These persons filed verified answers admitting the allegations of the complaint and alleging that they were members of Hibernia and the only persons having any right or interest in its property or assets other than the right to repayment of funds deposited with interest. Hibernia knew the residences of Curtin and of Mary, who was a resident of the state, and also knew or could have ascertained by an inspection of its records and the records of the Superior Court of Santa

Clara County that Curtin's entire estate including his membership rights in Hibernia had been distributed to Mary as sole legatee. Neither Curtin nor Mary were named as defendants, and the only service attempted on them was as unknown defendants, by publication and posting. No appearance was made on their behalf. The court directed entry of the defaults of all nonanswering defendants, including all persons unknown claiming any assets of Hibernia, and judgment was entered naming the 15 answering defendants as the sole members of Hibernia and the only persons having any right or interest in its property and assets.

In 1947 Hibernia was reorganized as a stock corporation under the name of The Hibernia Bank, with stock in the amount of $7,000,000 divided among the 15 individual defendants.

Up to the time of Mary's death in January 1951 neither she nor any of the plaintiffs had any notice or knowledge of the 1945 action or the judgment entered therein or of the conversion of Hibernia into a stock bank, or of the change of its name, or of any facts which might have led them to discovery of the 1945 suit. Although Mary knew that Curtin was one of the early depositors of Hibernia, she had no knowledge of the fact that he was a member or was possessed of any of the rights of a member, and plaintiffs had no such knowledge until about June 1952.

Plaintiff Bennett was informed shortly after October 21, 1951, of a newspaper article published on that date which told about the settlement of an action brought against Hibernia by the descendant of an early depositor. Upon investigation by Bennett, it was discovered that Curtin signed the by-laws in 1860, made a deposit and paid the entrance fee, and thus became a member of Hibernia. Discovery was also made of the 1945 suit, the conversion of Hibernia into a stock bank, and the distribution of all its stock to the 15 individual defendants. The information gained through the investigation was the first knowledge possessed by plaintiffs regarding their rights.

The present action was filed on January 15, 1953.

### Scope of General Demurrer in Action for Declaratory Relief

It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal

rights and duties of the respective parties under a contract and requests that the rights and duties be adjudged. (Code Civ. Proc., § 1060.) If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration. (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal. 2d 719, 728 et seq. [146 P.2d 673, 151 A.L.R. 1062] ; *cf. Anderson* v. *Stansbury*, 38 Cal.2d 707, 717 [242 P.2d 305] ; *Essick* v. *City of Los Angeles*, 34 Cal.2d 614, 624-625 [213 P.2d 492].)

However, where a complaint shows on its face that all relief is barred by the statute of limitations, it is unnecessary for the court to make a declaration of rights, and a general demurrer may be sustained. (*Maguire* v. *Hibernia S. & L. Soc., supra*, at pp. 733-737.) By analogy, the same rule should apply where the complaint shows that the entire controversy has been settled by a prior judgment.

Since, as we shall see, membership rights are material to a consideration of the defenses of res judicata and the statute of limitations, we shall discuss those rights under a separate heading.

### Did Curtin or Mary Have Membership Rights?

It is alleged that Curtin become a member of Hibernia in 1860 when he made a deposit, paid the entrance fee and signed the by-laws of the original organization which provided that persons doing these things "shall be styled and considered members of this corporation." Defendants contend that this allegation must be disregarded because the complaint shows on its face that Curtin was not a stockholder of the original corporation and the statutes made no provision for corporations composed of members rather than stockholders. (See *Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 723 [146 P.2d 673, 151 A.L.R. 1062] ; *People* v. *Perrin*, 56 Cal. 345, 347.) They argue that Curtin could not have been a member because Hibernia could not have validly existed as a membership corporation at that time. It appears, however, that an act adopted in 1862 and amended in 1864 provided that previously existing savings corporations and "all associations or societies for the like purpose" claiming in good faith to be incorporated under the laws of this state, could be organized as membership corporations without capital stock. (Stats. 1862, pp. 199-205; Stats. 1864, p. 531.) The complaint alleges that after June 1863 the corporation was composed of members only, none of whom owned stock, and that in August 1864 Hibernia filed a certificate of incorpora-

tion as a membership corporation under the 1862 act. Hibernia thus became a valid membership corporation in August 1864, regardless of what its prior legal status may have been. The 1864 statute obviously contemplated that the entire membership of the prior organization should be continued in the new organization, and Curtin automatically became a member of the new corporation.

It is further alleged that Curtin's membership continued until transferred to Mary either by assignment or descent and that plaintiffs, as distributees of the estate of Mary, succeeded to all of the membership rights. Defendants claim, however, that membership rights were not transferable and that any such rights which Curtin or Mary may have had were terminated when the account was closed and Curtin died in 1914. In support of their position defendants rely on certain by-laws set forth in the complaint which were adopted in and after September 1864. The complaint alleges that these by-laws were adopted without authority from the members and without Curtin's consent and that they were therefore invalid. Plaintiffs also argue that the by-laws do not establish that membership rights were not transferable or that they were terminated by the closing of the account.

■ The power to adopt by-laws is ordinarily in the stockholders or members of a corporation, but directors may be given such authority by statute or articles of incorporation. (See *Darrin* v. *Hoff,* 99 Md. 491 [58 A. 196, 200]; *Morton Gravel Road Co.* v. *Wysong,* 51 Ind. 4, 12; 8 Fletcher, Cyclopedia Corporations (1931), § 4172, p. 645; 13 Am.Jur. 284-285.) ■ The 1862 act provided that the "corporate powers of the corporation shall be exercised by a Board of not less than five Directors," and it contained a list of corporate powers, one of which was to "make by-laws, not inconsistent with the laws of this State," for certain enumerated purposes. (Stats. 1862, p. 200.) Under the 1862 act one of the purposes for which the corporation, and hence the directors, could make by-laws was to regulate "the time and manner in which any person may become, or may cease to be, a member of the corporation." (Stats. 1862, p. 200.) This language was broad enough to permit the directors to adopt by-laws specifying the conditions under which membership rights might be acquired or lost.

■ Hibernia was organized as a business and profit-making organization, and the members had property rights in the assets of the corporation. In the absence of a statute,

by-law or other regulation to the contrary, these rights were transferable. (*Cf. Riverside Land Co.* v. *Jarvis*, 174 Cal. 316, 327 [163 P. 54]; *Young* v. *New Pedrara Onyx Co.*, 48 Cal.App. 1, 14 [192 P. 55].) Article 4 of the 1864 by-laws, after stating that all persons who were members of the prior organization on August 29, 1864, should be deemed members of the new corporation, provided: "Other persons may be allowed to become members of this corporation by a vote of the Board of Directors, and not otherwise. Membership shall not pass with the ownership of moneys deposited with or under the control of the corporation." This language might be construed, as defendants urge, to mean that there could be no transfer of the rights of any member without action by the directors. On the other hand, it might be interpreted as governing only the rights of those who might join the corporation after adoption of the by-law and as providing that such persons, upon becoming members, would acquire only nontransferable membership rights. We cannot hold that the by-law must as a matter of law be construed in the manner urged by defendants, and, if this case goes to trial, the parties should be entitled to produce extrinsic evidence in support of their respective interpretations.

The next question is whether the complaint shows on its face that any membership rights which Curtin or Mary may have had were terminated when the account was closed by Mary in 1914. A by-law adopted in 1868 provides in part: "No one shall be deemed a member whose account is once closed." Since this by-law was adopted after Curtin became a member it would not be enforceable against him, in the absence of his consent, if it would unreasonably deprive him of his membership rights. (See *People's Home Sav. Bank* v. *Superior Court*, 104 Cal. 649, 652 [38 P. 452]; *Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.*, 111 Cal.App. 688, 701-702 [296 P. 933]; *Mancini* v. *Patrizi*, 87 Cal.App. 435, 439-440 [262 P. 375]; *State* v. *San Francisco Sav. & Loan Soc.*, 66 Cal.App. 53, 57-58 [225 P. 309]; *Bornstein* v. *District Grand Lodge No. 4*, 2 Cal.App. 624, 628 [84 P. 271].) The reasonableness of the by-law must be considered in the light of all the circumstances, including such matters as the purposes for which the corporation was organized and the extent of the rights of the particular member involved. Hibernia's certificate of incorporation provides that "the object for which it is formed is that of aggregating the funds and savings of the members of said

Corporation and of others, and of preserving and safely invest-
ing the same for their common benefit.'' It may be that it
was considered necessary to require members to retain their
accounts and deposits with Hibernia in order to promote the
success of the bank in accordance with the purposes for which
it was organized. However, these are matters which must
be determined by the trier of fact in the light of all of the
evidence.

Defendants assert that Curtin ratified the by-laws
in question. It appears that by an agreement signed subse-
quent to August 29, 1864, and prior to January 18, 1871,
Curtin ratified the reorganization proceedings of 1864 and
agreed to become a member of Hibernia as it existed under the
act of 1862. This agreement was executed pursuant to a
by-law adopted September 29, 1864, which provided that all
persons who were members on August 29, 1864, shall be
deemed members and that ''the signatures of such persons
to an agreement on their part to become members of this
corporation, and ratifying and confirming the incorporation
of [Hibernia] . . . shall be procured as speedily as may be.''
The exact language of the agreement does not appear in the
record, and plaintiffs' allegations regarding its substance can
be construed as referring only to the reorganization under the
1862 act as amended in 1864 and not to subsequent steps taken
by the new corporation such as the adoption of by-laws.
The allegation that Curtin agreed to become a member
of Hibernia ''as it existed under said act'' does not neces-
sarily mean anything more than that he was agreeing to the
reorganization under that particular statute rather than to
corporate existence of some other type. Defendants, of course,
are entitled to show by the language of the agreement or by
other evidence that Curtin ratified the by-laws, but the ques-
tion cannot be resolved on demurrer.

It is obvious from what has been said that serious questions
are presented as to what, if any, rights passed to Mary, but
we cannot hold as a matter of law that the allegations relied
upon by defendants with respect to the by-laws compel us to
disregard the general allegations that Curtin's membership
rights continued and passed to Mary on the transfer of his
account or upon his death.

### Is the 1946 Judgment Res Judicata?

The 1946 judgment purported to be in rem and to
be binding upon all persons having any claim to membership

rights, which would include Mary, who was then alive, and her successors. The judgment in effect determined that Mary and her successors had no membership rights. The complaint is thus subject to demurrer on the ground of res judicata unless the additional facts alleged will, as plaintiffs claim, justify setting that judgment aside. Plaintiffs assert that the complaint alleges facts which, although not disclosed by the judgment roll of the prior action, are sufficient to show that the 1946 judgment was obtained without proper service of process and by extrinsic fraud. It is immaterial, in connection with this question, whether the present action be regarded as primarily one for declaratory relief, with the prayer to set aside the prior judgment as merely incidental, or whether, as defendants assert, this is essentially a suit to set aside that judgment. In either event plaintiffs, having disclosed the existence of the prior judgment, are barred unless they plead and prove sufficient facts to overcome the judgment. It should be kept in mind that we are not concerned here with a judgment which is void on its face and therefore subject to collateral attack.

Ordinarily equity will not interfere with a judgment on the ground of extrinsic fraud or mistake unless the one whose interests were infringed can present a meritorious case; the plaintiff must plead and prove facts from which it appears, at least prima facie, that if the judgment were set aside and the proceedings were reopened, a different result would probably follow. (*Olivera* v. *Grace*, 19 Cal.2d 570, 578-579 [122 P.2d 564, 140 A.L.R. 1328] ; *Kupfer* v. *MacDonald*, 19 Cal.2d 566, 568-569 [122 P.2d 271] ; *Wattson* v. *Dillon*, 6 Cal.2d 33, 43 [56 P.2d 220] ; *Karlslyst* v. *Frazier*, 213 Cal. 377, 380 [2 P.2d 362] ; *Frost* v. *Hanscome*, 198 Cal. 550, 559 [246 P. 53] ; *Hite* v. *Mercantile Trust Co.*, 156 Cal. 765, 768 [106 P. 102] ; see *Hallett* v. *Slaughter*, 22 Cal.2d 552, 557-558 [140 P.2d 3] ; *Bell* v. *Thompson*, 147 Cal. 689, 692-694 [82 P. 327] ; *Parsons* v. *Weis*, 144 Cal. 410, 417-418 [77 P. 1007].) This rule has been applied in a number of cases involving proceedings in equity to set aside a judgment upon the ground that summons had not been served or that service was in some manner defective. (*Swallow* v. *Tungsten Products Co.*, 205 Cal. 207, 220 [270 P. 366] ; *Lee* v. *Colquhoun*, 175 Cal. 16, 17 [164 P. 894] ; *Matson* v. *John Batto & Sons*, 173 Cal. 800, 801 [161 P. 1144] ; *Gregory* v. *Ford*, 14 Cal. 138, 141 et seq. [73 Am.Dec. 639] ; *Brozey* v. *Alesen*, 116 Cal.App. 641, 642 [3 P.2d 68] ; *Hickey* v. *Algie*, 51 Cal.App. 595, 599-600

[197 P. 359] ; see *Bell* v. *Thompson,* 147 Cal. 689, 692-693 [82 P. 327] ; *Parsons* v. *Weis,* 144 Cal. 410, 417-418 [77 P. 1007] ; *Young* v. *Barker,* 83 Cal.App.2d 654, 657 [189 P.2d 521].) In order to meet the meritorious case requirement the complaint must allege that plaintiffs have membership rights in Hibernia, and, as we have seen, the allegations in this respect are sufficient against a general demurrer. We therefore assume, for the purposes of this discussion, that the membership rights were transferable and that they survived the closing of the account; we also assume that the action is not barred by the statute of limitations.

In considering the effect of the 1946 judgment we must determine whether Hibernia complied with section 29a of the Bank Act\* in that it did not name Mary, who was then alive, as a defendant or personally serve her with process. The section provides that actions brought thereunder shall include as defendants all persons appearing upon the records of the corporation as members, and all other persons who are known to the plaintiff to claim to be members, and other persons unknown claiming any right of membership or any interest in the property or assets of the corporation. A copy of the summons, which shall contain the names of the parties and a reference to all other persons unknown claiming any right to membership, is to be posted and recorded. Personal service is required to be made upon each defendant residing in this state whose place of residence is known to the plaintiff. A copy of the summons and complaint must be mailed to each of the known defendants who reside out of the state, at their place of residence, if known, and also to each of the known defendants, wherever residing, whose residences are unknown to plaintiff, addressed to them at the county seat of the county or city and county where the action is commenced.

██ We are of the opinion that section 29a, when prop-erly construed, requires personal service not only upon California members of known address whose names actually appear upon the records of the corporation but also upon persons

---

\*Section 29a of the Bank Act (Stats. 1945, p. 1017) was enacted in 1945 and now appears with slight changes as sections 671.1 to 671.17 of the Financial Code. It provides that any domestic corporation, which has no capital stock and has been carrying on a banking business for 20 years, may file a verified complaint to determine the persons entitled to membership in the corporation or to any right or interest in its property or assets. The statute also provides for various methods of service of summons, including service by publication against all unknown claimants, and that the judgment shall be conclusive against all persons and shall have the effect of a judgment in rem.

of known address residing in California who are successors of such members, provided the corporation is aware, or could by the exercise of reasonable diligence discover, that they are successors. While the section, in designating who must be included as defendants, does not expressly refer to persons known by the corporation to be successors of members, it requires the inclusion of all persons appearing on the records of the corporation as members and, if the corporation has actual knowledge that a person is the successor of a member whose name so appears, the successor should be treated as though his name likewise appears on the books as a member. Any other construction of the section would be unreasonable. If such were not the rule, a corporation could deliberately take advantage of and profit at the expense of a successor-member whose name had not been placed upon the books but whose interest was known to the corporation. There is nothing in the statute indicating that personal service need not be made if the defendant does not know or claim that he is a member, and where the corporation knows of the successor's interest, its duty should not be altered because of the fact, as is alleged with respect to Mary, that the successor is unaware of his rights in the company. The successor of a member known by the corporation to be such but whose name has not formally been placed in the books is entitled to the same consideration as the member whose name is in the books.

These principles are applicable not only to a member's successor who is known to the corporation but also to a successor who is unknown but who could and should be discovered by the company upon a reasonably diligent search. A close analogy in support of this construction of section 29a is afforded by *Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 317-318 [88 P. 356, 119 Am.St.Rep. 199, 8 L.R.A.N.S. 682]. The statute there involved authorized an in rem proceeding to establish and quiet title to property whenever public records were destroyed, and it provided, among other things, for personal service upon adverse claimants when the plaintiff knew or had been informed of them. The court said that the evident purpose was to secure, so far as possible, actual notice of the proceeding to all known claimants, and that where a statute is careful to provide for actual notice to the known claimants, it should not be construed as intended to permit a plaintiff to willfully or negligently close his eyes to the means of knowledge and thus secure a decree by

publication and posting alone as against persons whose identity he might have learned by the use of due effort. On the basis of this reasoning the court held that the statute, properly construed, imposed upon the plaintiff the duty of inquiry as to the names and residences of all persons who might claim an adverse interest in the property and that it required the plaintiff to designate and serve all persons whom, with reasonable diligence, he could ascertain to be claimants. Moreover, the rule of construction adopted in the Kerrigan case, which did not involve a fiduciary relationship, would seem particularly applicable to statutes dealing with a corporation and its members where, as we shall see, fiduciary obligations are involved.

Section 29a, when construed in the manner set forth above, meets the requirements of due process not only as to persons who must be personally served but also as to persons who cannot reasonably or practicably be given personal service and who are given substituted service under the various provisions for mailing, publication, and posting. (*Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 306, 318 [88 P. 356, 119 Am.St.Rep. 199, 8 L.R.A.N.S. 682]; cf. *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306 [70 S.Ct. 652, 94 L.Ed. 865].

The allegations of the complaint are sufficient to show that Mary was entitled to personal service in the proceedings under section 29a leading to the 1946 judgment. Facts disclosing Curtin's membership appeared on the records of Hibernia, which knew that Curtin died in 1914 and that upon his death "his successors" became entitled to membership. Hibernia also knew the residence of Mary, who lived in California throughout her entire lifetime. Mary should have been named in the prior action and given personal service provided Hibernia knew, or with reasonable diligence could have learned, that Mary was Curtin's successor. In this connection the complaint states that the events relating to the probate of Curtin's estate in Santa Clara County and its distribution to Mary were known to Hibernia or could have been ascertained by inspection of Hibernia's records and the records of the superior court in that county.

We do not mean to suggest that a corporation desiring to avail itself of the procedure authorized by section 29a must make a complete search of all known possible sources of information in order to notify its members and their suc-

cessors, such as, for example, examination of the probate records of all the counties of the state. Only a reasonable investigation is required, and its extent will necessarily depend upon the circumstances of each situation, including such matters as the facts known to the corporation and the value of the membership involved. We cannot hold as a matter of law that Hibernia had no duty to make inquiries at the last known address of a member known to have died, or to examine the probate records at the county seat of the place where the member resided or died, or to make an inquiry concerning the whereabouts of a known assignee of a deposit account.

■ Failure to comply with the statutory provisions constitutes grounds for the vacation of the judgment. ■ A suit in equity instituted for the purpose of vacating a judgment is a *direct* attack. (*Caldwell* v. *Taylor,* 218 Cal. 471, 475 [23 P.2d 758, 88 A.L.R. 1194]; *Bacon* v. *Bacon,* 150 Cal. 477, 486 [89 P. 317]; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, 209 [92 P. 184]; *Parsons* v. *Weis,* 144 Cal. 410, 415 [77 P. 1007]; *Turner* v. *Milstein,* 103 Cal.App.2d 651, 655 [230 P.2d 25].) ■ Such an attack may be made upon the ground of extrinsic fraud where it appears that there was a willful failure to give the required service or that willfully false affidavits of service were filed. (*Bernhard* v. *Waring,* 213 Cal. 175, 179-181 [2 P.2d 32]; *Rivieccio* v. *Bothan,* 27 Cal.2d 621, 624 [165 P.2d 677]; *Wool* v. *Scott,* 140 Cal.App.2d 835, 841 et seq. [296 P.2d 17]; *City of Los Angeles* v. *Morgan,* 105 Cal.App.2d 726, 730-731 [234 P.2d 319]; *Turner* v. *Milstein,* 103 Cal.App.2d 651, 654-655 [230 P.2d 25]; *Sipe* v. *McKenna,* 88 Cal.App.2d 1001, 1005 [200 P.2d 61]; *cf. Aldrich* v. *Aldrich,* 203 Cal. 433, 437 et seq. [264 P. 754].) ■ A direct attack has also been allowed in an independent action in equity where there has been a failure to exercise the degree of diligence required by law in connection with personal service (*Stern* v. *Judson,* 163 Cal. 726, 728 et seq. [127 P. 38]; *Rowe* v. *Silbaugh,* 107 Wash. 518 [182 P. 576, 577]), where false recitals of service were the result of fraud, negligence, or mistake (*Martin* v. *Parsons,* 49 Cal. 94, 100), and where failure to name a person as a party was the result of mistake (*Boyle* v. *Boyle,* 97 Cal.App. 703, 706-707 [276 P. 118]). These cases are in accord with the general principles followed in recent decisions of this court holding that extrinsic mistake may be a ground for vacation of a judgment by an independent action in equity

where there has been no fair adversary trial. (*Olivera* v. *Grace*, 19 Cal.2d 570, 578 [122 P.2d 564, 140 A.L.R. 1328]; *Hallett* v. *Slaughter*, 22 Cal.2d 552, 557 [140 P.2d 3].) The allegations are sufficient to bring the case within these principles. Hibernia knew of Curtin's membership, of his death leaving successors, and of Mary's address. Also, as we have seen, the complaint is sufficient to show that Hibernia either knew or, in the exercise of reasonable diligence, could have discovered that Mary was Curtin's successor.

### Is the Cause of Action Barred by the Statute of Limitations?

██ The general rules with respect to the statute of limitations in this type of action are set forth in *Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 733 et seq. [146 P.2d 673, 151 A.L.R. 1062], where we stated that, if lapse of time can bar an action by a member or stockholder to establish his interest in a corporation, the statutory period does not commence to run until the stockholder has knowledge or notice that his rights are denied or that his status is repudiated or controverted by the corporation. Upon this basis we held that the complaint did not show on its face that the alleged causes of action were barred by the statute of limitations or by laches. ██ The underlying theory is that a corporation holds its property in trust for the benefit of its shareholders and occupies a fiduciary position with respect to them; as a result the shareholder is entitled to assume that the corporation will not assert any adverse claim against him. (See *Yeaman* v. *Galveston City Co.*, 106 Tex. 389 [167 S.W. 710, 723-724, Ann.Cas. 1917E 191]; *Mountain Waterworks Const. Co.* v. *Holme*, 49 Colo. 412 [113 P. 501, 510]; *Owingsville & Mt. S. Turnpike Road Co.* v. *Bondurant's Adm'r.*, 107 Ky. 505 [54 S.W. 718, 719]; *Holly Sugar Corp.* v. *Wilson*, 101 Colo. 511 [75 P.2d 149, 152-153]; *Sharon* v. *Kansas City Granite & Monument Co.*, 233 Mo.App. 547 [125 S.W.2d 959, 963]; cf. *MacDermot* v. *Hayes*, 175 Cal. 95, 114-115 [170 P. 616]; *Cooper* v. *Spring Valley Water Co.*, 171 Cal. 158, 162 [153 P. 936]; *Hobbs* v. *Tom Reed Gold Min. Co.*, 164 Cal. 497, 499 [129 P. 781, 43 L.R.A.N.S. 1112].) ██ In cases involving fraud or mistake the statute commences to run when the plaintiff discovers he has a cause of action or, through the use of reasonable diligence, should have discovered it. (See *Stafford* v. *Shultz*, 42 Cal.2d 767, 776 [270 P.2d 1].) However, a fiduciary has a duty to make a full and fair disclosure

of all facts which materially affect the rights and interest of the parties, and, where a fiduciary relationship exists, facts which would ordinarily require investigation may not excite suspicion. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 440 [159 P.2d 958]; see *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 296 [295 P.2d 113].) Mary was, of course, bound by facts known to Curtin, and plaintiffs are bound by everything Curtin or Mary knew.

Defendants contend that, even if the by-laws adopted in and after 1864 did not have the effect of terminating membership rights or making such rights nontransferable, they nevertheless amounted to a repudiation of any claim that membership rights could pass by descent or assignment or could survive the closing of Curtin's deposit account. The allegations of the complaint are uncertain and obviously incomplete as to what transpired with respect to these by-laws, but the facts alleged do not establish as a matter of law that Curtin or Mary or plaintiffs knew or should have known that the adoption of the by-laws or any action taken pursuant to them amounted to a repudiation of membership rights acquired by Curtin.

The 1945 action, of course, repudiated any claims to membership rights which Mary may have had, but the complaint alleges that neither Mary nor any of the plaintiffs had any knowledge of the action prior to the death of Mary in January 1951. Defendants argue, however, that the statute commenced to run immediately upon the rendition of the judgment in 1946 and that the running of the statute did not depend upon knowledge of the judgment. We do not agree. The applicable statute is subdivision 4 of section 338 of the Code of Civil Procedure, which provides for a three-year limitation in actions on the ground of fraud or mistake and states that the cause of action shall not be deemed to have accrued until the aggrieved party has discovered the facts constituting the fraud or mistake. (*Cf. Anglo Calif. Trust Co.* v. *Kelley*, 117 Cal.App. 692, 695-696 [4 P.2d 604].)

It is also claimed that the proceedings taken in 1947 caused the statute of limitations to run against any membership rights which Mary obtained from Curtin. In that year the 15 defendants designated in the 1946 judgment as the sole persons entitled to membership took steps to convert Hibernia into a stock corporation, terminate the reserve fund and substitute for it capital stock together with surplus, change the

name of the corporation to The Hibernia Bank, and issue to these 15 defendants shares of stock in lieu of their interest in the reserve fund and other assets of the corporation. Plaintiffs allege that, contrary to the Bank Act,* a majority of the members were not present at the meeting in which these changes were authorized, that notice of the meeting was not mailed to all members but only to the 15 persons referred to above, and that Mary was not present at the meeting and had no knowledge thereof. Defendants take the position that these allegations show an actual invasion which constituted a conversion. ■ Ordinarily the statute of limitations applying in conversion actions (Code Civ. Proc., § 338, subd. 3) begins to run from the date of the conversion even though the injured person is ignorant of his rights. (*First Nat. Bank* v. *Thompson*, 60 Cal.App.2d 79, 83 [140 P.2d 75] ; *Coy* v. *E. F. Hutton & Co.*, 44 Cal.App.2d 386, 389-391 [112 P.2d 639] ; *Rose* v. *Dunk-Harbison Co.*, 7 Cal.App. 2d 502, 505-506 [46 P.2d 242].) This rule, however, is not absolute; for example, where there has been a fraudulent concealment of the facts the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion. (*Bartlett* v. *Pacific Nat. Bank*, 110 Cal.App.2d 683, 694 [244 P.2d 91] ; see *Rose* v. *Dunk-Harbison Co.*, 7 Cal. App.2d 502, 505 [46 P.2d 242] ; 2 Wood on Limitations (4th ed., 1916) 858-859; cf. *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal. 2d 226, 229 [153 P.2d 325].)

■ Since a fiduciary has a duty to make a full disclosure of facts which materially affect the rights of the parties, it seems obvious that any act by him amounting to a conversion of trust property is akin to a fraudulent concealment. (*Cf. Airola* v. *Gorham*, 56 Cal.App.2d 42, 45-47, 54 [133 P.2d 78] [breach of trust by secret delivery of deed to third person] ; *Bell* v. *Bayly Bros.*, 53 Cal.App.2d 149, 157 [127 P.2d 662].) This is in accord with statements in many decisions that statutes of limitation do not begin to run against an action for breach of a voluntary trust until there has been a repudiation which is brought home to the beneficiary. (See *Estate of Clary*, 203 Cal. 335, 341-342 [264 P. 242] ; *Hermosa Beach etc. Co.* v. *Law Credit Co.*, 175 Cal. 493, 496 [166 P. 22] ; *Cortelyou* v. *Imperial Land Co.*, 166 Cal. 14, 20

---

*Section 29 of the Bank Act, now Fin. Code, § 670, provides that banking corporations having no capital stock may elect to have such stock.

[134 P. 981] ; *Taylor* v. *Morris,* 163 Cal. 717, 725 [127 P. 66] ; *Elizalde* v. *Murphy,* 163 Cal. 681, 685 [126 P. 978] ; *Luco* v. *De Toro,* 91 Cal. 405, 416 [18 P. 866, 27 P. 1082] ; *Alton* v. *Rogers,* 127 Cal.App.2d 667, 679 [274 P.2d 487] ; *Mulli* v. *Mulli,* 105 Cal.App.2d 68, 74-75 [232 P.2d 556] ; *Kornbau* v. *Evans,* 66 Cal.App.2d 677, 683-684 [152 P.2d 651].) Similar principles were followed in *Maguire* v. *Hibernia S. & L. Soc., supra,* 23 Cal.2d 719, 735. The complaint alleges that Mary had no knowledge of the events which took place in 1947. ▮ In view of the allegations indicating that a fiduciary relationship existed, the fact that a document disclosing these events was a matter of public record filed with the Secretary of State cannot alone cause the statute to run. (*Cf. Seeger* v. *Odell,* 18 Cal.2d 409, 414-415 [115 P.2d 977, 136 A.L.R. 1291] ; *Stoll* v. *Selander,* 81 Cal.App.2d 286, 292 [183 P.2d 935].)

▮ The complaint does not show that the statute of limitations commenced to run as the result of the proceedings for extension of corporate existence in 1909. The documents filed in that year, while public records and constructive notice for certain purposes, are not sufficient to start the running of the statute in favor of the fiduciary as to those of its members who had no knowledge of them. The complaint alleges that neither Curtin nor Mary had any knowledge of these proceedings.

▮ It does not follow from the fact that there may have been no fiduciary relationship between Mary and the 15 individual defendants that the statute has run in their favor. The complaint alleges that the individual defendants received their shares of stock in 1947 with full knowledge of, and subject to, the rights of Curtin and his successors as members. Accordingly, we must assume that these defendants had notice of any breach of fiduciary duty or trust upon the part of the corporation. In analogous situations it has been held that, if a trustee of an express trust improperly transfers trust property to a third person who has knowledge that the transfer is in breach of trust, the statute of limitations does not run on the beneficiary's action against the third person until such time as the beneficiary learns of the breach of trust or of facts sufficient to arouse his suspicion. (*Schofield* v. *Cleveland Trust Co.,* 149 Ohio St. 133 [78 N.E.2d 167, 171] ; *Davidson* v. *Stagg,* 94 Mont. 272 [22 P.2d 152, 154-155] ; *Pennsylvania Co. for Ins. etc. Annuities* v. *Ninth Bank & Trust Co.,* 306 Pa. 148 [158 A. 251, 253] ; *In re Marshall's*

*Estate,* 138 Pa. 285 [22 A. 24, 26-67]; *Baldwin* v. *Taplin,* 113 Vt. 291 [34 A.2d 117, 121-122]; *Hall* v. *Windsor Sav. Bank,* 97 Vt. 125 [121 A. 582, 585, 124 A. 593, 596]; *American Nat. Bank of Enid* v. *Crews,* 191 Okla. 53 [126 P.2d 733, 742, 743]; *State Bank & Trust Co.* v. *Commercial Trust & Sav. Bank,* 300 Ill.App. 435 [21 N.E.2d 157]; see Rest., Trusts, § 327, comments i, k, Illus. 3; 3 Scott on Trusts (2d ed. 1956), § 327.2, p. 2378.) Defendants point to several California decisions which declare, in broad general terms, that where an involuntary trust is raised by operation of law the statute of limitations commences to run immediately and no repudiation is necessary. (See *Kroger* v. *Truitt,* 27 Cal.2d 288, 293 [163 P.2d 735]; *Wrightson* v. *Dougherty,* 5 Cal.2d 257, 264; *Benoist* v. *Benoist,* 178 Cal. 234, 236-237; *Norton* v. *Bassett,* 154 Cal. 411, 416; *Broder* v. *Conklin,* 121 Cal. 282, 288.) In none of these cases, however, did it appear that the beneficiary of the trust lacked knowledge of the transfer for a sufficient period to prevent the statute from being a bar. The distinction is material because the beneficiary's lack of knowledge of the breach of trust is the basis for tolling the statute, and, accordingly, the California cases cited above are not controlling here.

 Plaintiffs must allege and prove facts showing the time and surrounding circumstances of the discovery of the cause of action upon which they rely. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 441-443 [159 P.2d 958].) The purpose of this requirement is to afford the court a means of determining whether or not the discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs actually learned something they did not know before. In applying this rule it is important to recognize the distinction between cases where a plaintiff is under a duty to inquire and those in which he has no such duty until he has notice of facts sufficient to arouse the suspicions of a reasonable man.

 Where there is no such duty, for example, because of the existence of a fiduciary relationship, a plaintiff need not disprove that an earlier discovery could have been made upon a diligent inquiry but need show only that he made an actual discovery of hitherto unknown information within the statutory period before filing the action. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 442 [159 P.2d 958].) The circumstances of the discovery which, according to the complaint, was made within two years prior to the filing of the action

are sufficiently alleged to meet the requirements of the rule set forth above.

*Conclusion*

The court erred in sustaining the general demurrer.
The judgment is reversed.

Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

McComb, J., did not participate herein.

SPENCE, J.—I dissent.

I agree with the majority that "it is unnecessary for the court to make a declaration of rights" if the complaint shows on its face "that the entire controversy has been settled by a prior judgment." My disagreement is based upon my view that plaintiffs' complaint does show on its face that the entire controversy has been settled by the final judgment in the action brought by the bank in 1945.

It appears that neither plaintiffs nor their predecessors had any dealings with the bank after 1914. In April of that year Curtin assigned his account to Mary, who thereupon closed the account by withdrawing the entire balance of $363.54. Curtin thereafter died in 1914 and Mary died in 1951. Plaintiffs' present claim to alleged membership rights is based solely upon such claim as they may have as successors in interest of Curtin and Mary.

When the account was assigned and closed in 1914, the by-laws of the bank then provided, and had provided for approximately fifty years, that "Membership shall not pass with the ownership of moneys deposited . . ."; that persons other than the original members might become members but only by action of the board of directors "and not otherwise"; and that "[n]o one shall be deemed a member whose account is once closed." Regardless of plaintiffs' failure to allege whether Curtin did or did not consent to the quoted by-laws, and regardless of plaintiffs' general, conclusionary allegations regarding membership rights, there can be no doubt that plaintiffs' specific allegations concerning the by-laws show that neither Curtin nor Mary, following the assignment and the closing of the account, was among the "persons appearing and designated upon the books of the corporation as members therein, . . ." (Bank Act, § 29a; Stat. 1945, p. 1017.)

Nor were plaintiffs persons "known to the [bank] to claim to be members therein" for they allege, in their attempt to

avoid the bar of the statute of limitations, that neither Curtin nor Mary knew of any such claim. If plaintiffs' predecessors were not known to themselves "to claim" membership, they could not have been known to the bank "to claim" to be members. The verb "claim" means "To ask for, or seek to obtain, by virtue of authority, right, or supposed right; to demand as due." (Webster's New Internat. Dict., 2d ed.) It carries a connotation of an affirmative assertion of a supposed right. Since plaintiffs allege that neither Curtin nor Mary knew of any supposed right, they of course do not allege that Curtin or Mary ever affirmatively asserted, or made known a claim to, any supposed right.

It follows that when the bank brought its action in 1945, under section 29a of the Bank Act, neither Curtin nor Mary was among the persons required by the act to be personally named or served as defendants. They and their successors are nevertheless barred as they were among the "other persons unknown" whose claims, if any, were foreclosed by the judgment in rem which was entered in that action. I find nothing in *Title etc. Restoration Co.* v. *Kerrigan*, 150 Cal. 289 [88 P. 356, 119 Am.St.Rep. 199, 8 L.R.A.N.S. 682], or *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 [70 S.Ct. 652, 94 LEd. 865], which points to a contrary conclusion here.

I therefore conclude that the trial court properly sustained the general demurrer to plaintiffs' complaint and entered judgment in favor of defendants. In view of this conclusion, it is unnecessary to discuss defendants' further contention that plaintiffs' belated claim is barred by the statute of limitations.

For the reasons stated, I would affirm the judgment.

Respondents' petition for a rehearing was denied January 23, 1957. Spence, J., was of the opinion that the petition should be granted.